# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

--------------------------------------------------------------------X
                                         :

GARNET CAPITAL ADVISORS, LLC,             :

                               :

                        Plaintiff,      :    **SUMMONS**

   -against-                       :

                               :    Index No.:

SCOTT CARRAGHER,                 :

                               :

                       Defendant.    :

                               :

--------------------------------------------------------------------X

**TO THE ABOVE-NAMED DEFENDANT:**

    **YOU ARE HEREBY SUMMONED** to answer the Verified Complaint in this action and to serve a copy of your Answer, or, if the Complaint is not served with this Summons, to serve a Notice of Appearance on the Plaintiff's Attorney within 20 days after the service of this Summons, exclusive of the day of service (or within 30 days after the service is complete if this Summons is not personally delivered to you within the State of New York). In case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Verified Complaint.

Dated: July 19, 2016
      Uniondale, New York

                         FARRELL FRITZ, P.C.

         By:     *Kevin P. Mulry*

                 Kevin P. Mulry
                 *Attorneys for Plaintiff*
                 1320 RXR Plaza
                 Uniondale, New York 11556
                 Tel: (516) 227-0700
                 Fax: (516) 227-0777

TO:    Scott Carragher
        23 West Lake Blvd.
        Morristown, New Jersey 07960

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------------X
                              :

GARNET CAPITAL ADVISORS, LLC,       :

                          :     **VERIFIED**

              Plaintiff,       :     **COMPLAINT**

   -against-                  :

                          :     Index No.:

SCOTT CARRAGHER,              :

                          :

             Defendant.     :

                          :
-----------------------------------------------------------------------X

       Plaintiff GARNET CAPITAL ADVISORS, LLC, by and through its attorneys, Farrell

Fritz, P.C., as and for its Verified Complaint against Defendant SCOTT CARRAGHER, alleges

as follows:

**PARTIES**

       1.     Plaintiff Garnet Capital Advisors, LLC ("Garnet") is a Delaware Limited Liability

Company with its principal place of business at 500 Mamaroneck Avenue, Harrison, New York.

       2.     Upon information and belief, Scott Carragher ("Carragher") is a citizen of New

Jersey with a residence in Morristown, New Jersey.

**FACTS AND BACKGROUND**

       3.     Garnet is a financial services company specializing in managing loan portfolio

sales and providing valuation services to banks, government agencies and other credit grantors.

       4.     As Garnet's clients are banks, government agencies and other creditors, the

information Garnet obtains from its clients and uses, in both client communication and

transaction management, is highly sensitive and subject to privacy laws and regulations and

contractual confidentiality obligations.

5.      In October 2010, Carragher was hired as a junior salesperson at Garnet.

6.      Carragher had no experience in the financial services industry at that time, but as the husband of Laura Ishmael, the sister of Robin Ishmael, a managing partner of Garnet, was felt to have the capability from prior sales positions to learn the loan-sales business and potentially work with clients.

7.      On October, 28, 2010, upon commencing employment, Carragher signed an Employee Confidentiality, Developments and Non-Competition Agreement (the "Confidentiality and Non-Competition Agreement").   A copy of the Confidentiality and Non-Competition Agreement is attached as Exhibit A.

8.      Pursuant to the Confidentiality and Non-Competition Agreement, Carragher agreed, *inter alia*, that:

- I agree not to disclose directly or indirectly to any unauthorized person or entity, and agree not to make use of, without the Company's prior written permission, at any time during or after my employment, knowledge which I acquire either before, during or after my employment with the Company respecting the Company's confidential information except for and on behalf of the Company, and solely within the course and scope of my employment.

- I further agree that I shall not, after the termination of my employment, use any such Company Property and shall use my reasonable best efforts to prevent others from using the same.

- Immediately upon the termination of my employment I shall deliver all Company Property in my possession, and all copies thereof, to the Company.

- During the period of my employment and for a period of one year after termination of my employment, I will not ... engage in any business or other commercial activity which is or may be, directly or indirectly, competitive in the United States with the products and services being designed, conceived developed, marketed, distributed or sold by the Company at the time of termination of my employment.

- During the period of my employment and for a period of one year after termination of my employment (for any reason whatsoever), I will not, directly or indirectly, ... solicit, divert or take away or attempt to solicit, divert

or take away, directly or indirectly, any of the Company's customers or any prospective customers being solicited by the Company at the time of my termination, or anyone who was within the then most recent twelve-month period a customer of the Company.

- I agree that any breach of this Agreement by me may cause irreparable damage to the Company and that in the event of such breach, the Company may have, in addition to any and all remedies of law, the right to injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder.

9.      Carragher's performance during his time of employment at Garnet was not satisfactory.

10.     Carragher's performance deficiencies during his time of employment at Garnet included: (1) taking actions for which he did not possess adequate skills or experience; (2) difficulty in communicating facts accurately and difficulty or refusal to acknowledge mistakes; and (3) difficulty in interacting productively with coworkers.

11.     On January 14, 2014, Carragher informed Garnet that he had accepted a position with Guardian Real Estate Investment Banking ("Guardian").   Guardian was subsequently renamed and is currently called Sortis Capital LLC ("Sortis").

12.     On January 15, 2014, in response to concerns raised by Garnet that such employment would violate the non-compete provisions of the Confidentiality and Non-Competition Agreement, Carragher represented to Garnet that, although Guardian offers loan sales as a service along with other business lines, his work for Guardian would not involve any activities that would compete with Garnet's interests.

13.     By letter dated February 4, 2014, Garnet confirmed to Carragher that his employment with Garnet was terminated.  A copy of the letter dated February 4, 2014 is attached as Exhibit B.

14.     At the time of his termination from Garnet, Carragher was required to return all

Garnet confidential information and property and not retain any materials related to Garnet's clients.

15.    The letter confirming Carragher's termination of employment stated:

> Please also remember to honor your confidentiality obligations as described in the Employee Handbook which you were required to read upon hire, as well as in accordance with the confidentiality/non-compete agreement you signed, a copy of which you were provided upon hire and which is enclosed here for your reference.

16.    Contrary to his agreement, Carragher did retain Garnet confidential information and property after his termination.

17.    In February 2014, after Carragher joined Guardian, Garnet became aware that, contrary to his prior representations, Carragher was working for Guardian in a capacity that directly competed with Garnet. Separately, Garnet learned that he had retained Garnet's confidential information and property.

18.    Once these facts became known, Garnet sent Carragher a letter dated February 10, 2014, advising him that his retention of confidential, proprietary and/or commercially sensitive information from Garnet was a violation of law and the Confidentiality and Non-Competition Agreement. Garnet demanded the return of all Garnet confidential information and property, and the identification of any persons to whom such information had been disclosed.   A copy of the letter dated February 10, 2014 is attached as Exhibit C.

19.    In addition, that letter advised Carragher that his work for Guardian was in a competitive capacity with Garnet, and as such was contrary to representations he had made to Garnet on January 15, 2014, and was also a violation of his obligations under the Confidentiality and Non-Competition Agreement.

20.    By letter dated February 12, 2014, Carragher represented that all confidential information and property of Garnet had been returned to Garnet, that no such information or

property remained in his possession, and that he had not disclosed such information to anyone. A copy of the letter dated February 12, 2014 is attached as Exhibit D.

21.     Shortly thereafter, it became apparent that Carragher's representation was not true, as he had retained further Garnet materials, and was continuing to violate the Confidentiality and Non-Competition Agreement.

22.     During this time, Garnet's sales staff received calls from current clients advising that Carragher was soliciting them for business.  These were not clients that Carragher had covered while at Garnet, but were clients covered by other salespeople.  These contacts of Garnet clients by Carragher were therefore not only violations of the Confidentiality and Non-Competition Agreement, but were also evidence that Carragher had obtained from Garnet's network, and retained, Garnet sales database information as he would not have been aware of the contact information for such clients without such access.

23.     In addition, Carragher posted retained Garnet transaction-announcement materials on his LinkedIn page, misrepresenting those sales as being attributable to him.  Carragher's involvement in those sales was in a junior sales capacity only.  Moreover, Carragher's use of Garnet materials on his LinkedIn page after his termination from Garnet was explicitly prohibited under the Confidentiality and Non-Competition Agreement, and contrary to the representations made in Carragher's February 12, 2014 certification letter to Garnet (Exhibit D). A copy of screen shots from Carragher's LinkedIn page are attached as Exhibit E.

24.     Garnet's attorney sent Carragher a letter on March 21, 2014, detailing his violations of the Confidentiality and Non-Competition Agreement, and demanding written confirmation of the return of Garnet confidential information and property and of Carragher's compliance with the terms of the Confidentiality and Non-Competition Agreement and an

acknowledgement of his continuing obligations under that agreement.  A copy of the letter dated March 21, 2014 is attached as Exhibit F.

25.     Carragher did not respond to this letter.

26.     Nevertheless, Carragher did remove the Garnet materials from his LinkedIn page.

27.     Based on the removal of materials from the LinkedIn page, the exchange of correspondence and the representations from Carragher, Garnet believed that the issues had been resolved in the two-month period after Carragher's termination from Garnet, and Garnet took no further action.

28.     In May 2016, however, Garnet received evidence that despite his representations to the contrary in 2014, Carragher has continued to retain Garnet confidential information and property for more than two years since left Garnet, a continuing violation of the Confidentiality and Non-Competition Agreement.

29.     Specifically, in May 2016, additional Garnet documents were found in Carragher's automobile.

30.     These documents included offering materials, confidential client information, and Garnet proprietary analysis documentation, containing sensitive and proprietary information of Garnet and its clients, including pricing and investor bidding information from specific sales transactions.

31.     In addition, certain of the documents that have been in Carragher's possession for over two years since he left Garnet relate to lines of business that Guardian did not conduct when Carragher became employed there in 2014.   The retention by Carragher of these Garnet documents for over two years raises the concern that he used these documents to not only compete with Garnet in lines of business Guardian was already involved in, but also sought to

expand Guardian's business into new product lines in which it had not previously conducted business.

32.     This discovery of Garnet's documents in Carragher's possession in May 2016, two years after his departure from Garnet and his representations that he had not retained Garnet documents, demonstrates that despite his agreement to not retain information and his representations that he had not, Carragher has continued to retain Garnet confidential information and property, and continued to violate the Confidentiality and Non-Competition Agreement.

### AS AN   FOR A   IRST CAUSE OF ACTION
**(Breach of Contract: Preliminary and Permanent Injunction)**

33.     Garnet repeats and realleges the allegations in paragraphs 1 through 32 as if fully set forth herein.

34.     Garnet possesses information from its clients that is highly sensitive and subject to privacy laws and regulations and contractual confidentiality obligations.

35.     Garnet's confidential information and property contains both its clients' sensitive information as well as its own confidential business and proprietary information.

36.     The Confidentiality and Non-Competition Agreement Carragher executed with Garnet on or about October 28, 2010, is a valid and enforceable contract that imposes upon Carragher certain contractual obligations, including the obligation to not compete with Garnet for a period of one year after his termination and to return all Garnet confidential information and property and to not use such information or disseminate such information to others.

37.     Carragher breached his obligations to Garnet through his competition with Garnet immediately after his termination from Garnet, and by his retention, misappropriation and use of Garnet's confidential information and property for his own benefit, to Garnet's detriment.

38.     Garnet fully performed its contractual obligations to Carragher.

39.     Carragher's wrongful conduct has caused, and unless enjoined will continue to cause, irreparable harm and damage to Garnet.

40.     Garnet has no adequate remedy at law and monetary damages are insufficient to address the injury Garnet has suffered and will continue to suffer.

41.     By reason of the foregoing, Garnet is entitled to a preliminary and permanent injunction: (a) enjoining Carragher from accessing and using Garnet's confidential information and property; (b) requiring Carragher to return to Garnet all confidential information and property obtained from Garnet; (c) enjoining Carragher from directly or indirectly disclosing, reproducing, or using all confidential information and property obtained from Garnet; (d) requiring Carragher to maintain, preserve, and return to Garnet all confidential information and property obtained from Garnet; (e) requiring Carragher to provide a sworn statement and an accounting of the whereabouts of Garnet's confidential information and property, including all Garnet files, data and/or information removed, routed, downloaded, transferred, printed, or accessed by Carragher, and all such files, data and/or information transferred, forwarded or communicated by Carragher to any other person or entity; and (f) awarding compensatory and punitive damages in an amount to be determined at trial.

WHEREFORE, Plaintiff demands judgment against Defendant, as follows:

(A)     On the First Cause of Action, a preliminary and permanent injunction: (a) enjoining Carragher from accessing, and using Garnet's confidential information and property; (b) requiring Carragher to return to Garnet all confidential information and property obtained from Garnet; (c) enjoining Carragher from directly or indirectly disclosing, reproducing, or using all confidential information and property obtained from Garnet; (d) requiring Carragher to

maintain, preserve, and return to Garnet all confidential information and property obtained from Garnet; (e) requiring Carragher to provide a sworn statement and an accounting of the whereabouts of Garnet's confidential information and property, including all Garnet files, data and/or information removed, routed, downloaded, transferred, printed, or accessed by Carragher, and all such files, data and/or information transferred, forwarded or communicated by Carragher to any other person or entity; and (f) awarding compensatory and punitive damages in an amount to be determined at trial;

(B)    Awarding Plaintiff reasonable attorneys' fees, costs and expenses; together with

(C)    Such other and further relief as the Court deems just, equitable and proper.

Dated: July 19, 2016
       Uniondale, New York

FARRELL FRITZ, P.C.

By:    _____
       Kevin Mulry

       Uniondale, New York 11556
       Tel: (516) 227-0700
       Fax: (516) 227-0777

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

------------------------- ----------------------------------------X

GARNET CAPITAL ADVISORS, LLC,

                            Plaintiff,

    -against-

SCOTT CARRAGHER,

                            Defendant.

------------------------------------------------------------------X

**VERIFICATION**

Index No.:

STATE OF NEW YORK    )
                       )   ss.
COUNTY OF WESTCHESTER)

       Sean McVity, being duly sworn, deposes and says, that he is a general partner of the Plaintiff company; he has read the foregoing summons and verified complaint; the contents thereof are true to his own knowledge, except as to those matters stated to be alleged on information and belief and, as to those matters, he believes them to be true. That the reason this verification is made by the deponent is because the Plaintiff is a Delaware limited liability company.

       The grounds of the deponent's belief as to all matters in the summons and verified complaint not stated upon his knowledge, are investigations which he has caused to be made concerning the subject matter of this proceeding and information acquired by him in the course of his duties as such officer of the said corporation, and from the records and papers of the corporation.

                                              Sean McVity

Sworn to before me this _18_
day of July, 2016

Notary Public

SHERRI FELDMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FE6160689
Qualified In Westchester County
My Commission Expires February 12, 2018

Interwoven\5715928.1

**EXHIBIT A**

Case 7:16-cv-07155-KMK   Document 1-1   Filed 09/13/16   Page 14 of 37

## EMPLOYEE CONFIDENTIALITY, DEVELOPMENTS AND NON-COMPETITION AGREEMENT

In consideration of my initial or continued employment with Garnet Capital Advisors, LLC (the "Company") and the benefits associated therewith, I agree to the following:

**Confidential Information:** I understand that during the course of my employment, I may have access to Company confidential information and that such access is given in trust and confidence. As such, I agree not to disclose directly or indirectly to any unauthorized person or entity, and agree not to make use of, without the Company's prior written permission, at any time during or after my employment, knowledge which I acquire either before, during or after my employment with the Company respecting the Company's confidential information except for and on behalf of the Company, and solely within the course and scope of my employment.

Company confidential information means confidential information (whether or not reduced to writing or other medium) concerning the organization, business or finances of the Company including, but not limited to, trade secrets or confidential information respecting processes, methods, show-how and know-how, techniques, systems, processes, formulae, customer and supplier lists and accounts, pricing and costing methods, projects, plans, proposals, deals, and non-public financial information. I also agree to safeguard the same by all reasonable steps and to abide by all Company policies and procedures regarding storage, copying and handling of documents. I realize that the above applies to all confidential information of others entrusted to the Company. This includes, but is not limited to, business or any consumer data that we receive from a client or third party. This obligation shall be in force unless and until such confidential information becomes generally available to the public by publication or other legal means (but not as a result of unlawful use or publication).

**Company Property:** I agree that during my employment I shall not make, use or permit to be used any Company Property otherwise than for the benefit of the Company. The term "Company Property" shall include all notes, notebooks, memoranda, reports, lists, records, drawings, specifications, data, graphics, software, devices, computers, cellular telephones, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company Property in my possession, custody or control (whether prepared by me or others). I further agree that I shall not, after the termination of my employment, use any such Company Property and shall use my reasonable best efforts to prevent others from using the same. I acknowledge and agree that all Company Property shall be and remain the sole and exclusive property of the Company. Immediately upon the termination of my employment I shall deliver all Company Property in my possession, and all copies thereof, to the Company.

**Assignment of Developments:** I agree to disclose promptly and fully to the Company and to no one else: (i) all inventions, ideas, improvements, discoveries, works, modifications, processes, works of authorship, documentation, formulae, techniques, designs, methods, trade secrets, technical specifications and technical data, know-how and show-how, concepts, expressions or other developments whatsoever or any interest therein (whether or not patentable or registrable

Employee Name: _Scott Carragher_                              Page 1 of 4

under copyright, trademark or similar statutes; and (ii) any Development made using the Company's time, materials or facilities, even if such Development does not relate to the business of the Company.

The determination as to whether a Development is related to the business of the Company shall be made solely by an authorized representative of the Company. Any Development relating to the business of the Company and disclosed by me within one year following the termination of my employment with the Company shall be deemed to fall within the provisions of this paragraph and the next paragraph unless I prove that such Development was first conceived and made prior to my employment by the company or following such termination. The "business of the Company" includes not only the actual business currently conducted by the Company but also any business in which the Company proposes to engage.

I agree that all such Developments listed above and the benefits thereof are and shall immediately become the sole and absolute property of the Company, as works made for hire or otherwise. To the extent that any Developments are not or are deemed not to be works made for hire, I hereby assign to the Company all right, title and interest, including, without limitation, tangible and intangible rights such as patent rights, trademarks and copyrights, that I may have or may acquire in and to all such Developments, benefits and/or rights resulting therefrom, and agree promptly to execute any further specific assignments related to such Developments, benefits and/or rights at the request of the Company.

I agree to assist the Company without charge (for so long as I am an employee of the Company) and for as long as may be necessary (but at the Company's expense including reasonable compensation to me if I am no longer an employee of the Company): (1) to apply, obtain, register and renew for, and vest in, the Company's benefit alone (unless the Company otherwise directs), patents, trademarks, copyrights, works, and other protection for such Developments in all countries, and (2) in any controversy or legal proceeding relating to Developments.

In the event that the Company is unable to secure my signature after reasonable effort in connection with any patent, trademark, copyright, works or other similar protection relating to a Development, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf and stead to execute and file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of patents, trademarks, copyrights, mask works or other similar protection thereon with the same legal force and effect as if executed by me.

**Noncompetition:** During the period of my employment with the Company, I will devote my available business time and best efforts to promoting and advancing the business of the Company (and I shall neither pursue any business opportunity outside the Company nor take any position with any organization other than the Company without the approval of the disinterested members of the Company's Managing Partners.) During the period of my employment and for a period of one year after termination of my employment (for any reason whatsoever), I will not, whether alone or as a partner, joint venturer, officer, director, consultant, agent, employee, independent contractor or stockholder of any company or other commercial enterprise, engage in any business or other commercial activity which is or may be, directly or indirectly, competitive in the United

Employee Name: Scott Carragher                                    Page 2 of 4

States with the products or services being designed, conceived, developed, marketed, distributed or sold by the Company at the time of termination of my employment.

The foregoing prohibition shall not prevent employment or engagement by any company or commercial enterprise, or any division thereof, not substantially engaged in the business of originating or trading loan portfolios, as long as the activities of any such employment or engagement, in any capacity, does not involve work on matters directly related to the products or services being developed, designed, conceived, distributed, marketed or sold by the Company at the time of termination of my employment.

The ownership by me of not more than three (3) percent of the shares of stock of any corporation having a class of equity securities actively traded on a national securities exchange or on the Nasdaq Stock Market shall not be deemed, in and of itself, to violate the prohibitions of this paragraph.

**Nonsolicitation:**  During the period of my employment with the Company and for a period of one year after termination of my employment (for any reason whatsoever), I will not, directly or indirectly, either for myself or for any other commercial enterprise, solicit, divert or take away or attempt to solicit, divert or take away, directly or indirectly, any of the Company's customers or any prospective customers being solicited by the Company at the time of my termination, or anyone who was within the then most recent twelve-month period a customer of the Company.

During the period of my employment by the Company and for a period of one (1) year after termination of my employment (for any reason whatsoever), I will not and I will not on behalf of any company or other commercial enterprise which employs me, which has hired me as a consultant or which is directly or indirectly controlled by me, to, directly or indirectly, solicit or attempt to solicit any person who is then (or has been within the preceding year) employed or engaged to perform services by the Company to become employed by or enter into contractual relations with any individual or entity other than the Company, or in any manner induce, seek to induce, entice, or endeavor to entice any such person to leave his or her employment with the Company.

**Use of Likeness:**  I hereby give the Company permission to use my picture, voice, image, or likeness during my employment with or without using my name, for whatever business purposes it reasonably deems necessary.  I further agree that the Company may continue to use such items that have been prepared, or are in the process of being prepared, at the date of termination of my employment for a period of one (1) year following such termination.

**Employment at Will:**  I understand that neither this agreement nor any other document that I have signed with the Company constitutes an implied or written employment contract or guarantee of continued employment and that my employment with the Company is on an "at-will" basis.  Accordingly, I understand that I may terminate my employment with the Company at any time for any or no reason and that I may be terminated at any time for any or no reason.

**Conflicts of Interest:**  I hereby represent that, except as disclosed in writing to the Company, I am not a party to, or bound by the terms of, any agreement with or obligation to any previous

---

Employee Name: _Scott Carragher_                    Page 3 of 4

employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of my employment with the Company or to refrain from competing, directly or indirectly, with the business of such previous employer or any other party. I further represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement or obligation to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to or during my employment with the Company, and I will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

**Assignment:** The term "Company" shall include the Company and any of its subsidiaries, divisions, or affiliates. The Company shall have the right to assign this Agreement to its successors and assigns, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by said successors or assigns.

**Equitable Remedies:** I agree that any breach of this Agreement by me may cause irreparable damage to the Company and that in the event of such breach, the Company shall have, in addition to any and all remedies of law, the right to injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder.

**Amendments/Waivers:** Any amendment to or modification of this Agreement, or any waiver of any provision hereof, shall be in writing and signed by the Company; provided however, that any such waiver, amendment to or modification of this Agreement shall be consented to in writing by all Managing Partners of the Company. Any waiver by the Company of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

**Survival:** This entire agreement and my obligations hereunder shall survive any termination or cessation of my employment and shall be binding upon my heirs, executors, administrators and legal representatives.

**Miscellaneous:** If any provision of this agreement is held by a court to be invalid or unenforceable, such provision will be reformed and construed to the fullest extent enforceable, and the remainder of this agreement shall continue in force and effect. The interpretation, performance and enforcement of this agreement shall be governed by and construed in accordance with New York State law, without giving effect to the principles of conflicts of laws of such state. This Agreement supersedes all prior agreements, whether written or oral, with the Company in connection with the subject matter hereof.

Employee Name: Scott Carragher

Signature: Scott Carragher

Date: 10/28/10

Employee Name: Scott Carragher

Page 4 of 4

# EXHIBIT B

Case 7:16-cv-07155-KMK   Document 1-1   Filed 09/13/16   Page 19 of 37



# GARNET
### CAPITAL ADVISORS

February 4, 2014                                          **VIA Certified U.S. Mail**

Scott Carragher
23 West Lake Blvd.
Morristown, NJ 07960

Dear Scott:

This is to confirm that your employment as Assistant Vice President with Garnet Capital Advisors, LLC and TriNet HR Corporation has been terminated effective February 4, 2014.

Your final paycheck including wages through February 3, 2014, will be direct deposited on February 14, 2014.

If you were enrolled in a company-sponsored group health plan on February 3, 2014, your health benefits coverage will remain in effect through the end of that month (the month in which your employment ends). TriNet will provide a separate notice of your right to continue eligible benefits at your own expense, according to the policies of the plan provider and Federal law.

Should you desire additional information or have questions concerning your benefits, please contact TriNet's Employee Solution Center toll free at (800) 638-0461 or via e-mail at employees@trinet.com. You will continue to have access to HR Passport to view your W-2, past Earnings Statements, and benefits-related information. In addition, you will receive a post-employment letter from TriNet which will provide additional information in general and specifically as to health and FSA benefits.

Keep in mind post-employment that TriNet HR Corporation has been your employer of record while you were on Garnet's payroll.   Accordingly, please inform future potential employers that employment verification requests must be made to TriNet by calling its Employee Solution Center toll free at (800) 638-0461.

It is important to note that TriNet does not automatically mail W-2s to employees, current or former, in January; they are accessible by you on HR Passport. Toward the end of January when you wish to obtain your W-2, simply log on in the same manner you always have. Once the W-2 is available, instructions will be posted on the Home page for navigating to the W-2. No one at Garnet is authorized to access it for you.

If you prefer to receive your W-2 by mail, you must log onto HR Passport (which you can do indefinitely) and make that delivery election as follows: Go to the Myself tab > About Me > Employee Options > W2 Option > Edit. If you encounter any difficulty trying to change your delivery option to MAIL, call the above-noted Employee Solution Center number for help. In addition, anytime in the future that your mailing address changes, be sure to update it in HR Passport.

All of your unreimbursed expenses, if any, must be submitted by expense report to Garnet within fourteen (14) days after receipt of this letter.

Please also remember to honor your confidentiality obligations as described in the Employee Handbook which you were required to read upon hire, as well as in accordance with the confidentiality/non-compete agreement you signed, a copy of which you were provided upon hire and which is enclosed here for your reference.

We wish you all the best in your future endeavors.

Sincerely,

*Mary*

Mary Ishmael
Human Resources Manager

Enclosure

## EMPLOYEE CONFIDENTIALITY, DEVELOPMENTS
## AND NON-COMPETITION AGREEMENT

In consideration of my initial or continued employment with Garnet Capital Advisors, LLC (the "Company") and the benefits associated therewith, I agree to the following:

**Confidential Information:** I understand that during the course of my employment, I may have access to Company confidential information and that such access is given in trust and confidence. As such, I agree not to disclose directly or indirectly to any unauthorized person or entity, and agree not to make use of, without the Company's prior written permission, at any time during or after my employment, knowledge which I acquire either before, during or after my employment with the Company respecting the Company's confidential information except for and on behalf of the Company, and solely within the course and scope of my employment.

Company confidential information means confidential information (whether or not reduced to writing or other medium) concerning the organization, business or finances of the Company including, but not limited to, trade secrets or confidential information respecting processes, methods, show-how and know-how, techniques, systems, processes, formulae, customer and supplier lists and accounts, pricing and costing methods, projects, plans, proposals, deals, and non-public financial information. I also agree to safeguard the same by all reasonable steps and to abide by all Company policies and procedures regarding storage, copying and handling of documents. I realize that the above applies to all confidential information of others entrusted to the Company. This includes, but is not limited to, business or any consumer data that we receive from a client or third party. This obligation shall be in force unless and until such confidential information becomes generally available to the public by publication or other legal means (but not as a result of unlawful use or publication).

**Company Property:** I agree that during my employment I shall not make, use or permit to be used any Company Property otherwise than for the benefit of the Company. The term "Company Property" shall include all notes, notebooks, memoranda, reports, lists, records, drawings, specifications, data, graphics, software, devices, computers, cellular telephones, credit and/or calling cards, keys, access cards, documentation or other materials of any nature and in any form, whether written, printed, electronic or in digital format or otherwise, relating to any matter within the scope of the business of the Company or concerning any of its dealings or affairs and any other Company Property in my possession, custody or control (whether prepared by me or others). I further agree that I shall not, after the termination of my employment, use any such Company Property and shall use my reasonable best efforts to prevent others from using the same. I acknowledge and agree that all Company Property shall be and remain the sole and exclusive property of the Company. Immediately upon the termination of my employment I shall deliver all Company Property in my possession, and all copies thereof, to the Company.

**Assignment of Developments:** I agree to disclose promptly and fully to the Company and to no one else: (i) all inventions, ideas, improvements, discoveries, works, modifications, processes, works of authorship, documentation, formulae, techniques, designs, methods, trade secrets, technical specifications and technical data, know-how and show-how, concepts, expressions or other developments whatsoever or any interest therein (whether or not patentable or registrable

Employee Name: _Scott Carragher_                                    Page 1 of 4

under copyright, trademark or similar statutes; and (ii) any Development made using the Company's time, materials or facilities, even if such Development does not relate to the business of the Company.

The determination as to whether a Development is related to the business of the Company shall be made solely by an authorized representative of the Company. Any Development relating to the business of the Company and disclosed by me within one year following the termination of my employment with the Company shall be deemed to fall within the provisions of this paragraph and the next paragraph unless I prove that such Development was first conceived and made prior to my employment by the company or following such termination. The "business of the Company" includes not only the actual business currently conducted by the Company but also any business in which the Company proposes to engage.

I agree that all such Developments listed above and the benefits thereof are and shall immediately become the sole and absolute property of the Company, as works made for hire or otherwise. To the extent that any Developments are not or are deemed not to be works made for hire, I hereby assign to the Company all right, title and interest, including, without limitation, tangible and intangible rights such as patent rights, trademarks and copyrights, that I may have or may acquire in and to all such Developments, benefits and/or rights resulting therefrom, and agree promptly to execute any further specific assignments related to such Developments, benefits and/or rights at the request of the Company.

I agree to assist the Company without charge (for so long as I am an employee of the Company) and for as long as may be necessary (but at the Company's expense including reasonable compensation to me if I am no longer an employee of the Company): (1) to apply, obtain, register and renew for, and vest in, the Company's benefit alone (unless the Company otherwise directs), patents, trademarks, copyrights, works, and other protection for such Developments in all countries, and (2) in any controversy or legal proceeding relating to Developments.

In the event that the Company is unable to secure my signature after reasonable effort in connection with any patent, trademark, copyright, works or other similar protection relating to a Development, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and on my behalf and stead to execute and file any such application and to do all other lawfully permitted acts to further the prosecution and issuance of patents, trademarks, copyrights, mask works or other similar protection thereon with the same legal force and effect as if executed by me.

Noncompetition: During the period of my employment with the Company, I will devote my available business time and best efforts to promoting and advancing the business of the Company (and I shall neither pursue any business opportunity outside the Company nor take any position with any organization other than the Company without the approval of the disinterested members of the Company's Managing Partners.) During the period of my employment and for a period of one year after termination of my employment (for any reason whatsoever), I will not, whether alone or as a partner, joint venturer, officer, director, consultant, agent, employee, independent contractor or stockholder of any company or other commercial enterprise, engage in any business or other commercial activity which is or may be, directly or indirectly, competitive in the United

Employee Name: _Scott Carragher_                                                    Page 2 of 4

States with the products or services being designed, conceived, developed, marketed, distributed or sold by the Company at the time of termination of my employment.

The foregoing prohibition shall not prevent employment or engagement by any company or commercial enterprise, or any division thereof, not substantially engaged in the business of originating or trading loan portfolios, as long as the activities of any such employment or engagement, in any capacity, does not involve work on matters directly related to the products or services being developed, designed, conceived, distributed, marketed or sold by the Company at the time of termination of my employment.

The ownership by me of not more than three (3) percent of the shares of stock of any corporation having a class of equity securities actively traded on a national securities exchange or on the Nasdaq Stock Market shall not be deemed, in and of itself, to violate the prohibitions of this paragraph.

**Nonsolicitation:** During the period of my employment with the Company and for a period of one year after termination of my employment (for any reason whatsoever), I will not, directly or indirectly, either for myself or for any other commercial enterprise, solicit, divert or take away or attempt to solicit, divert or take away, directly or indirectly, any of the Company's customers or any prospective customers being solicited by the Company at the time of my termination, or anyone who was within the then most recent twelve-month period a customer of the Company.

During the period of my employment by the Company and for a period of one (1) year after termination of my employment (for any reason whatsoever), I will not and I will not on behalf of any company or other commercial enterprise which employs me, which has hired me as a consultant or which is directly or indirectly controlled by me, to, directly or indirectly, solicit or attempt to solicit any person who is then (or has been within the preceding year) employed or engaged to perform services by the Company to become employed by or enter into contractual relations with any individual or entity other than the Company, or in any manner induce, seek to induce, entice, or endeavor to entice any such person to leave his or her employment with the Company.

**Use of Likeness:** I hereby give the Company permission to use my picture, voice, image, or likeness during my employment with or without using my name, for whatever business purposes it reasonably deems necessary. I further agree that the Company may continue to use such items that have been prepared, or are in the process of being prepared, at the date of termination of my employment for a period of one (1) year following such termination.

**Employment at Will:** I understand that neither this agreement nor any other document that I have signed with the Company constitutes an implied or written employment contract or guarantee of continued employment and that my employment with the Company is on an "at-will" basis. Accordingly, I understand that I may terminate my employment with the Company at any time for any or no reason and that I may be terminated at any time for any or no reason.

**Conflicts of Interest:** I hereby represent that, except as disclosed in writing to the Company, I am not a party to, or bound by the terms of, any agreement with or obligation to any previous

Employee Name: _Scott Carragher_                                    Page 3 of 4

employer or other party to refrain from using or disclosing any trade secret or confidential or proprietary information in the course of my employment with the Company or to refrain from competing, directly or indirectly, with the business of such previous employer or any other party. I further represent that my performance of all the terms of this Agreement and as an employee of the Company does not and will not breach any agreement or obligation to keep in confidence proprietary information, knowledge or data acquired by me in confidence or in trust prior to or during my employment with the Company, and I will not disclose to the Company or induce the Company to use any confidential or proprietary information or material belonging to any previous employer or others.

**Assignment:** The term "Company" shall include the Company and any of its subsidiaries, divisions, or affiliates. The Company shall have the right to assign this Agreement to its successors and assigns, and all covenants and agreements hereunder shall inure to the benefit of and be enforceable by said successors or assigns.

**Equitable Remedies:** I agree that any breach of this Agreement by me may cause irreparable damage to the Company and that in the event of such breach, the Company shall have, in addition to any and all remedies of law, the right to injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder.

**Amendments/Waivers:** Any amendment to or modification of this Agreement, or any waiver of any provision hereof, shall be in writing and signed by the Company; provided however, that any such waiver, amendment to or modification of this Agreement shall be consented to in writing by all Managing Partners of the Company. Any waiver by the Company of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach of such provision or any other provision hereof.

**Survival:** This entire agreement and my obligations hereunder shall survive any termination or cessation of my employment and shall be binding upon my heirs, executors, administrators and legal representatives.

**Miscellaneous:** If any provision of this agreement is held by a court to be invalid or unenforceable, such provision will be reformed and construed to the fullest extent enforceable, and the remainder of this agreement shall continue in force and effect. The interpretation, performance and enforcement of this agreement shall be governed by and construed in accordance with New York State law, without giving effect to the principles of conflicts of laws of such state. This Agreement supersedes all prior agreements, whether written or oral, with the Company in connection with the subject matter hereof.

Employee Name: _Scott Carragher_

Signature: _Scott Carragher_

Date: _10/28/10_

Employee Name: _Scott Carragher_                                   Page 4 of 4

# EXHIBIT C



**GARNET**
CAPITAL ADVISORS

February 10, 2014

**BY EMAIL AND**
**FEDEX**
Mr. Scott Carragher
23 West Lake Blvd
Morristown, NJ 07960

Dear Scott:

It has come to our attention that you are working in a competitive capacity for your new employer, which is contrary to the representations you made to me on January 15, 2014. As you know, this is in direct violation of your obligations under your October 28, 2010 Employee Confidentiality, Developments, and Non-Competition Agreement ("Non-Competition Agreement"), a copy of which is enclosed.

We have also learned that you have taken confidential, proprietary, and/or commercially sensitive information that belongs to Garnet ("Confidential Information"). This conduct not only violates your Non-Competition Agreement, it also violates the law.

Garnet demands that you return <u>all of its Confidential Information</u> and <u>any of its other property</u> no later than Thursday, February 13, 2014. This includes, *but is not limited to*, offering memos, loan sale agreements, deal materials, client information, data extracted from SalesLogix, emails sent or received from your Garnet email address, pitchbooks, marketing materials, data request lists, and seller questionnaires. Garnet also demands that you identify, by the same date, each individual, organization, or entity to whom you have disclosed any Confidential Information, the date(s) of such disclosure(s), and what was disclosed. Garnet further demands that you certify in writing, by February 13, 2014, that you have destroyed all Confidential Information in electronic or digital format that is in your possession or under your control. A return FedEx label is provided in this package for your use in doing so.

Please be advised that Garnet reserves all of its rights to pursue legal action against you and any individuals, organizations, and/or entities who have aided you in your unlawful conduct or interfered with Garnet's contractual rights, including without limitation, your new employer. Should you have any questions, please contact me.

Sincerely,

Robin Ishmael
Managing Partner

# EXHIBIT D

Case 7:16-cv-07155-KMK Document 1-1 Filed 09/13/16 Page 28 of 37

February 12, 2014


Ms. Robin Ishmael
Garnet Capital Advisors
500 Mamaroneck Ave.
Suite 215
Harrison, NY 10528


Ms. Ishmael,

All Confidential Information and property of Garnet Capital in my possession
has now been returned to you, per your Demand Letter dated February 10, 2014.

No Confidential Information or property of Garnet Capital, ether physical or
in electronic form remains in my possession. At no time, past, present or future has
or will any Confidential Information be disclosed, shared with, communicated or
transmitted to, any parties, organizations or individuals.

If you have any questions, please contact me.

Regards,

Scott Carragher

**EXHIBIT E**

Case 7:16-cv-07155-KMK   Document 1-1   Filed 09/13/16   Page 30 of 37









**EXHIBIT F**

Case 7:16-cv-07155-KMK   Document 1-1   Filed 09/13/16   Page 35 of 37

# DEBORAH A. SHAPIRO, LLC

### ATTORNEY AT LAW

270 Madison Avenue, Suite 1301, New York, New York 10016
TEL 212 248 2085   FAX 212 658 9536
www.deborahshapiro.com

March 21, 2014

**BY FEDEX**
Mr. Scott Carragher
23 West Lake Blvd
Morristown, NJ 07960

RE: Garnet Capital Advisors, LLC

Dear Mr. Carragher:

This firm represents Garnet Capital Advisors, LLC ("Garnet") regarding your former employment with Garnet and your continuing obligations.

As you know from Garnet's February 10, 2014 letter, Garnet became aware that you were violating your obligations under your October 28, 2010 Employee Confidentiality, Developments, and Non-Competition Agreement ("Non-Competition Agreement") as well as the law. Garnet directed you to, among other things, return all of its Confidential Information, return all of its property, and identify anyone to whom you disclosed any Confidential Information.

Despite Garnet's February 10 letter and the fact that you already were in breach of your contractual and common law obligations, Garnet has now learned that the representations in your February 12, 2014 letter may not have been truthful, accurate, and complete. For example, and without limitation, while you stated that you returned all of Garnet's property, you have posted at least seven of Garnet's Sale Announcements on your profile on LinkedIn. You even coupled some of these Sale Announcements with commentary that is inaccurate, misleading, and potentially damaging to Garnet's reputation and business interests. Garnet also has reason to believe that you retained and have been using its Confidential Information, such as client contact information that is not publicly available.

Moreover, Garnet has reason to believe that you have solicited its clients and potential clients in blatant violation of your Non-Competition Agreement. For example and without limitation, Garnet learned that you recently called one of its clients to solicit business for your current employer and, while you were still employed by Garnet, you diverted or attempted to divert a client opportunity to the company that currently employs you.

Page **2** of **3**
March 21, 2014

Accordingly, Garnet demands that you provide written confirmation no later than 5:00 p.m. on Tuesday, March 25, 2014 that:

1. you have returned all of Garnet's Confidential Information and all of Garnet's property that was in your possession, custody, or control;

2. you have stopped soliciting Garnet's clients and potential clients and will not engage in such activity for the duration of the non-solicitation period set forth in the "Nonsolicitation" section of your Non-Competition Agreement;

3. you have not violated, and you will not violate, the "Nonsolicitation" section of your Non-Competition Agreement in any other way;

4. you have not violated any of your obligations under the "Noncompetition" section of your Non-Competition Agreement;

5. you have provided a copy of your Non-Competition Agreement to your current employer;

6. you have removed all of Garnet's property (including without limitation, its Sale Announcements and its logo) and all of its Confidential Information from any form of written or electronic communication and returned it to Garnet or certified that you have destroyed it;

7. you have removed all written and electronic statements and intimations (including without limitation, those set forth on social media, websites, and resumes) regarding work you purport to have performed for Garnet that are in any way untrue, exaggerated, or misrepresented (for example and without limitation, that you established a new business line, constructed a loan sale design for FDIC Loss Share Loans, or were responsible for the sale of FDIC Loss Share Loans);

8. you have corrected any other representations, including without limitation, verbal statements or intimations, that you made regarding work you purport to have performed for Garnet that were in any way untrue, exaggerated, or misrepresented;

9. you affirm your continuing obligations to Garnet to the extent set forth in the Non-Competition Agreement.

If you fail to comply with these demands by 5:00 p.m. on Tuesday, March 25, 2014, Garnet will take such action as it deems appropriate, including without limitation, notifying your current employer of its intent to enforce your Non-Competition Agreement and to seek redress for your misrepresentations regarding Garnet.

Page **3** of **3**
March 21, 2014

Please be advised that Garnet continues to reserve all of its rights to pursue legal action against you and any party that has directly or indirectly aided in or benefited from your unlawful conduct or interfered with Garnet's contractual rights.  Should you have any questions, please contact me.

Very truly yours,

Deborah A. Shapiro