UNITED STATES DISTERICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
GARNET CAPITAL ADVISORS, LLC,

                Plaintiff,

  -against-

SCOTT CARRAGHER,

               Defendant.
------------------------------------------------------------------X

**AMENDED COMPLAINT**

Index No.: 16-cv-07155-KMK

Plaintiff GARNET CAPITAL ADVISORS, LLC, by and through its attorneys, Farrell Fritz, P.C., as and for its Amended Complaint against Defendant SCOTT CARRAGHER, alleges as follows:

## PARTIES

1. Plaintiff Garnet Capital Advisors, LLC ("Garnet") is a Delaware Limited Liability Company with its principal place of business at 500 Mamaroneck Avenue, Harrison, New York.

2. Garnet is a financial services company specializing in managing loan portfolio sales and providing valuation services to banks, government agencies and other credit grantors.

3. As Garnet's clients are banks, government agencies and other creditors, the information Garnet obtains from its clients and uses, in both client communication and transaction management, is highly sensitive and subject to privacy laws and regulations and contractual confidentiality obligations.

4. Upon information and belief, Scott Carragher ("Carragher") is a citizen of New Jersey with a residence in Morristown, New Jersey. Carragher is a former employee of Garnet.

## SUBJECT MATTER JURISDICTION

5. This action was filed on or about July 19, 2016, in the Supreme Court of the State of New York, Westchester County.

6. In this action, Garnet seeks a judgment enjoining Carragher, its former employee, from using or disclosing Garnet confidential information and property; requiring a return to Garnet of all its confidential information and property; and requiring Carragher to account for the whereabouts of any Garnet confidential information and property and any transfer of such information and property.

7. Carragher removed this action to this Court on or about September 13, 2016, alleging, *inter alia*, that the monetary value of the subject matter of the issues relating to Garnet's complaint is in excess of $75,000.

8. The amount in controversy in this action does not exceed $75,000, and this Court therefore lacks subject matter jurisdiction.

9. As described in more detail below, while Garnet is entitled to the injunctive relief requested, Garnet does not presently know of any monetary value that would flow to it in the event the requested injunctive relief were granted, because it does not believe that Carragher himself presents a competitive threat, and it is not aware of the use Carragher has made of Garnet confidential information and property.

10. Garnet brings this action for injunctive relief, to prevent Carragher from using its confidential information and property or giving it to others, to have all such information and property returned to it, and to require Carragher to account for all such information and property and to state if and how it has been used or transferred.

11. While Garnet's complaint did, and this amended complaint does, seek damages in the event discovery or further proceedings reveal that they are warranted, Garnet cannot presently quantify any such damages. For that reason, Garnet did not believe at the time of the filing of the complaint and does not now believe that the amount in controversy exceeds $75,000.

## FACTS AND BACKGROUND

12. In October 2010, Carragher was hired as a junior salesperson at Garnet, with the title of Assistant Vice President, which is the lowest salesperson title at Garnet.

13. Carragher had no experience in the financial services industry at that time, but as the husband of Laura Ishmael, the sister of Robin Ishmael, a managing partner of Garnet, he was felt to have the capability from prior sales positions to learn the loan-sales business and potentially work with clients.

14. On October, 28, 2010, upon commencing employment, Carragher signed an Employee Confidentiality, Developments and Non-Competition Agreement (the "Confidentiality and Non-Competition Agreement"). A copy of the Confidentiality and Non-Competition Agreement is attached as Exhibit A.

15. Pursuant to the Confidentiality and Non-Competition Agreement, Carragher agreed, *inter alia*, that:

- I agree not to disclose directly or indirectly to any unauthorized person or entity, and agree not to make use of, without the Company's prior written permission, at any time during or after my employment, knowledge which I acquire either before, during or after my employment with the Company respecting the Company's confidential information except for and on behalf of the Company, and solely within the course and scope of my employment.

- I further agree that I shall not, after the termination of my employment, use any such Company Property and shall use my reasonable best efforts to prevent others from using the same.

- Immediately upon the termination of my employment I shall deliver all Company Property in my possession, and all copies thereof, to the Company.

- During the period of my employment and for a period of one year after termination of my employment, I will not ... engage in any business or other commercial activity which is or may be, directly or indirectly, competitive in the United States with the products and services being designed, conceived developed, marketed, distributed or sold by the Company at the time of termination of my employment.

- During the period of my employment and for a period of one year after termination of my employment (for any reason whatsoever), I will not, directly or indirectly, ... solicit, divert or take away or attempt to solicit, divert or take away, directly or indirectly, any of the Company's customers or any prospective customers being solicited by the Company at the time of my termination, or anyone who was within the then most recent twelve-month period a customer of the Company.

- I agree that any breach of this Agreement by me may cause irreparable damage to the Company and that in the event of such breach, the Company may have, in addition to any and all remedies of law, the right to injunction, specific performance or other equitable relief to prevent the violation of my obligations hereunder.

16. Carragher's performance during his time of employment at Garnet was not satisfactory.

17. Carragher's performance deficiencies during his time of employment at Garnet included: (1) taking actions for which he did not possess adequate skills or experience; (2) difficulty in communicating facts accurately and difficulty or refusal to acknowledge mistakes; and (3) difficulty in interacting productively with coworkers.

18. In late 2013, because of his poor performance, Carragher was advised that he should seek other employment. Because of his family relationship, he was not terminated, but was given several months to find other employment and remained employed at Garnet during that period.

19. On January 14, 2014, Carragher informed Garnet that he had accepted a position with Guardian Real Estate Investment Banking ("Guardian"). Guardian was subsequently renamed and is currently called Sortis Capital LLC ("Sortis").

20. On January 15, 2014, in response to concerns raised by Garnet that such employment would violate the non-compete provisions of the Confidentiality and Non-Competition Agreement, Carragher represented to Garnet that, although Guardian offers loan sales as a service along with other business lines, his work for Guardian would not involve any activities that would compete with Garnet's interests.

21. By letter dated February 4, 2014, Garnet confirmed to Carragher that his employment with Garnet was terminated. A copy of the letter dated February 4, 2014 is attached as Exhibit B.

22. At the time of his termination from Garnet, Carragher was required to return all Garnet confidential information and property and not retain any materials related to Garnet's clients.

23. The letter confirming Carragher's termination of employment stated:

> Please also remember to honor your confidentiality obligations as described in the Employee Handbook which you were required to read upon hire, as well as in accordance with the confidentiality/non-compete agreement you signed, a copy of which you were provided upon hire and which is enclosed here for your reference.

24. Contrary to his agreement, Carragher did retain Garnet confidential information and property after his termination.

25. In February 2014, after Carragher joined Guardian, Garnet became aware that, contrary to his prior representations, Carragher was working for Guardian in a capacity that directly competed with Garnet. Separately, Garnet learned that he had retained Garnet's confidential information and property.

26. Once these facts became known, Garnet sent Carragher a letter dated February 10, 2014, advising him that his retention of confidential, proprietary and/or commercially sensitive information from Garnet was a violation of law and the Confidentiality and Non-Competition Agreement. Garnet demanded the return of all Garnet confidential information and property, and the identification of any persons to whom such information had been disclosed. A copy of the letter dated February 10, 2014 is attached as Exhibit C.

27. In addition, that letter advised Carragher that his work for Guardian was in a competitive capacity with Garnet, and as such was contrary to representations he had made to Garnet on January 15, 2014, and was also a violation of his obligations under the Confidentiality and Non-Competition Agreement.

28. By letter dated February 12, 2014, Carragher represented that all confidential information and property of Garnet had been returned to Garnet, that no such information or property remained in his possession, and that he had not disclosed such information to anyone. A copy of the letter dated February 12, 2014 is attached as Exhibit D.

29. Shortly thereafter, it became apparent that Carragher's representation was not true, as he had retained further Garnet materials, and was continuing to violate the Confidentiality and Non-Competition Agreement.

30. During this time, Garnet's sales staff received calls from current clients advising that Carragher was soliciting them for business. These were not clients that Carragher had covered while at Garnet, but were clients covered by other salespeople. These contacts of Garnet clients by Carragher were therefore not only violations of the Confidentiality and Non-Competition Agreement, but were also evidence that Carragher had obtained from Garnet's network, and retained, Garnet sales database information as he would not have been aware of the

contact information for such clients without such access.

31. Despite these contacts by Carragher with Garnet clients, Garnet is not aware of any of its clients that subsequently became clients of Carragher.

32. In addition, Carragher posted retained Garnet transaction-announcement materials on his LinkedIn page, misrepresenting those sales as being attributable to him. Carragher's involvement in those sales was in a junior sales capacity only. Moreover, Carragher's use of Garnet materials on his LinkedIn page after his termination from Garnet was explicitly prohibited under the Confidentiality and Non-Competition Agreement, and contrary to the representations made in Carragher's February 12, 2014 certification letter to Garnet (Exhibit D). A copy of screen shots from Carragher's LinkedIn page are attached as Exhibit E.

33. Garnet's attorney sent Carragher a letter on March 21, 2014, detailing his violations of the Confidentiality and Non-Competition Agreement, and demanding written confirmation of the return of Garnet confidential information and property and of Carragher's compliance with the terms of the Confidentiality and Non-Competition Agreement and an acknowledgement of his continuing obligations under that agreement. A copy of the letter dated March 21, 2014 is attached as Exhibit F.

34. Carragher did not respond to this letter.

35. Nevertheless, Carragher did remove the Garnet materials from his LinkedIn page.

36. Based on the removal of materials from the LinkedIn page, the exchange of correspondence and the representations from Carragher, Garnet believed that the issues had been resolved in the two-month period after Carragher's termination from Garnet, and Garnet took no further action.

37. In May 2016, however, Garnet received evidence that despite his representations

to the contrary in 2014, Carragher has continued to retain Garnet confidential information and property for more than two years since he left Garnet, a continuing violation of the Confidentiality and Non-Competition Agreement.

38. Specifically, in May 2016, additional Garnet documents were found in Carragher's automobile.

39. These documents included offering materials, confidential client information, and Garnet proprietary analysis documentation, containing sensitive and proprietary information of Garnet and its clients, including pricing and investor bidding information from specific sales transactions.

40. In addition, certain of the documents that have been in Carragher's possession for over two years since he left Garnet relate to lines of business that Guardian did not conduct when Carragher became employed there in 2014. The retention by Carragher of these Garnet documents for over two years raises the concern that he used these documents to not only compete with Garnet in lines of business Guardian was already involved in, but also sought to expand Guardian's business into new product lines in which it had not previously conducted business.

41. This discovery of Garnet's documents in Carragher's possession in May 2016, two years after his departure from Garnet and his representations that he had not retained Garnet documents, demonstrates that despite his agreement to not retain information and his representations that he had not, Carragher has continued to retain Garnet confidential information and property, and continued to violate the Confidentiality and Non-Competition Agreement.

42. While Carragher by himself does not present a competitive threat to Garnet, his

dissemination of Garnet confidential information and property could potentially present a threat. Although Garnet at this time is not aware of any lost business or lost business opportunity, Garnet is entitled to a return of all its confidential information and property, and enforcement of the agreements by Carragher to not retain or use such information. In addition, Garnet is entitled to an accounting from Carragher of his use or dissemination of the information.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract: Preliminary and Permanent Injunction)**

43. Garnet repeats and realleges the allegations in paragraphs 1 through 43 as if fully set forth herein.

44. Garnet possesses information from its clients that is highly sensitive and subject to privacy laws and regulations and contractual confidentiality obligations.

45. Garnet's confidential information and property contains both its clients' sensitive information as well as its own confidential business and proprietary information.

46. The Confidentiality and Non-Competition Agreement Carragher executed with Garnet on or about October 28, 2010, is a valid and enforceable contract that imposes upon Carragher certain contractual obligations, including the obligation to not compete with Garnet for a period of one year after his termination and to return all Garnet confidential information and property and to not use such information or disseminate such information to others.

47. Carragher breached his obligations to Garnet through his competition with Garnet immediately after his termination from Garnet, and by his retention, misappropriation and use of Garnet's confidential information and property for his own benefit, to Garnet's detriment.

48. Garnet fully performed its contractual obligations to Carragher.

49. Carragher's wrongful conduct has caused, and unless enjoined will continue to cause, irreparable harm and damage to Garnet.

50. Garnet has no adequate remedy at law and monetary damages are insufficient to address the injury Garnet has suffered and will continue to suffer.

51. By reason of the foregoing, Garnet is entitled to a preliminary and permanent injunction: (a) enjoining Carragher from accessing and using Garnet's confidential information and property; (b) requiring Carragher to return to Garnet all confidential information and property obtained from Garnet; (c) enjoining Carragher from directly or indirectly disclosing, reproducing, or using all confidential information and property obtained from Garnet; (d) requiring Carragher to maintain, preserve, and return to Garnet all confidential information and property obtained from Garnet; (e) requiring Carragher to provide a sworn statement and an accounting of the whereabouts of Garnet's confidential information and property, including all Garnet files, data and/or information removed, routed, downloaded, transferred, printed, or accessed by Carragher, and all such files, data and/or information transferred, forwarded or communicated by Carragher to any other person or entity; and (f) awarding compensatory and punitive damages in an amount to be determined at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant, as follows:

(A) On the First Cause of Action, a preliminary and permanent injunction: (a) enjoining Carragher from accessing, and using Garnet's confidential information and property; (b) requiring Carragher to return to Garnet all confidential information and property obtained from Garnet; (c) enjoining Carragher from directly or indirectly disclosing, reproducing, or using all confidential information and property obtained from Garnet; (d) requiring Carragher to maintain, preserve, and return to Garnet all confidential information and property obtained from Garnet; (e) requiring Carragher to provide a sworn statement and an accounting of the whereabouts of Garnet's confidential information and property, including all Garnet files, data

and/or information removed, routed, downloaded, transferred, printed, or accessed by Carragher, and all such files, data and/or information transferred, forwarded or communicated by Carragher to any other person or entity; and (f) awarding compensatory and punitive damages in an amount to be determined at trial;

    (B)    Awarding Plaintiff reasonable attorneys' fees, costs and expenses; together with

    (C)    Such other and further relief as the Court deems just, equitable and proper.

Dated: November 2, 2016
       Uniondale, New York

FARRELL FRITZ, P.C.

By: *Kevin P. Mulry* (signature)

Kevin P. Mulry
Sarah M. Baird
*Attorneys for Plaintiff*
1320 RXR Plaza
Uniondale, New York 11556
Tel: (516) 227-0700
Fax: (516) 227-0777