UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GARNET CAPITAL ADVISORS, LLC,<br><br>        Plaintiff,<br><br>  -against-<br><br>SCOTT CARRAGHER,<br><br>        Defendant. | Civil Action No. 7:16-cv-7155 (KMK)(JCM)<br><br>**ANSWER TO AMENDED COMPLAINT, WITH DEFENSES AND COUNTERCLAIMS** |

Defendant, Scott Carragher, by and through his undersigned counsel, answers the Amended Complaint of Plaintiff dated November 2, 2016, and asserts counterclaims against Plaintiff as follows:

## PARTIES

1. Defendant lacks knowledge or information sufficient to admit or deny the allegations in paragraph 1 of the Amended Complaint, but believes them to be true.

2. Defendant admits the allegations in paragraph 2 of the Amended Complaint.

3. Inasmuch as Defendant has not worked for Plaintiff since February 2014, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the Amended Complaint. To the extent that paragraph 3 of the Amended Complaint refers to the time period during which Defendant worked for Plaintiff, Defendant admits only that some of the information that Garnet obtained from its clients was highly sensitive and subject to contractual confidentiality obligations, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 3 of the Amended Complaint.

4. Defendant admits the allegations in paragraph 4 of the Amended Complaint.

3534964

**SUBJECT MATTER JURISDICTION**

5. Defendant admits the allegations in paragraph 5 of the Amended Complaint.

6. Defendant admits only that the allegations in paragraph 6 of the Amended Complaint only partially and summarily characterize the relief sought by Plaintiff in this action, and respectfully refers the Court to the entirety of Plaintiff's Amended Complaint for the full scope of the relief sought by Plaintiff.

7. Defendant admits the allegations in paragraph 7 of the Amended Complaint.

8. Defendant denies the allegations in paragraph 8 of the Amended Complaint. Defendant maintains that the Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs. Jurisdictional discovery, which has been ordered by the Court, has not yet been completed.

9. Answering paragraph 9 of the Amended Complaint, Defendant denies that Plaintiff is entitled to the injunctive relief requested, and lacks knowledge or information sufficient to admit or deny the remainder of the allegations concerning what Plaintiff "knows" or "believes" as alleged therein.

10. Defendant admits only that the allegations in paragraph 10 of the Amended Complaint only partially and summarily characterize the relief sought by Plaintiff in this action, and respectfully refers the Court to the entirety of Plaintiff's Amended Complaint for the full scope of the relief sought by Plaintiff.

11. Answering paragraph 11 of the Amended Complaint, Defendant admits only that Plaintiff's original Complaint and the present Amended Complaint seek monetary damages, but denies that "Plaintiff cannot presently quantify any such damages." Furthermore, Plaintiff lacks

knowledge or information sufficient to admit or deny the remainder of the allegations in paragraph 11 concerning what Plaintiff does not or did not "believe" as alleged therein.

## FACTS AND BACKGROUND

12. Defendant admits only that in October 2010 he was hired by Plaintiff as an Assistant Vice President, and lacks knowledge or information sufficient to admit or deny the remainder of the allegations in paragraph 12 of the Amended Complaint.

13. Defendant admits that he had no experience in the financial services industry prior to October 2011 as alleged in paragraph 13 of the Amended Complaint, but lacks knowledge or information sufficient to form a belief as to the truth of the allegations concerning how Plaintiff "felt" about Defendant at that time.

14. Defendant lacks knowledge or information sufficient to admit or deny the allegations in paragraph 14 of the Amended Complaint, inasmuch as Defendant was never given copies of any documents he signed at the time of his hire, including the document attached as Exhibit A to the Amended Complaint, and was never given the opportunity to read and digest the contents of any such documents.

15. For the reasons set forth above, Defendant lacks knowledge or information sufficient to admit or deny the allegations in paragraph 15 of the Amended Complaint.

16. Defendant denies the allegations in paragraph 16 of the Amended Complaint.

17. Defendant denies the allegations in paragraph 17 of the Amended Complaint.

18. Defendant denies that his performance at Garnet was "poor"; further denies that "poor performance" was the reason for his termination of employment at Garnet; but admits the remainder of the allegations in paragraph 18 of the Amended Complaint.

19. Defendant admits the allegations in paragraph 19 of the Amended Complaint.

20. Defendant denies the allegations in paragraph 20 of the Amended Complaint.

21. Defendant does not recollect whether he ever received the letter identified as Exhibit B to the Complaint, and therefore denies the allegations in paragraph 21 of the Amended Complaint, leaving Plaintiff to its proof.

22. Defendant denies the allegations in paragraph 22 of the Amended Complaint as pled, but admits that in January or February 2014, Plaintiff's Human Resources Manager, Mary Ishmael, asked Defendant to return his firm-issued Blackberry cell phone, which he did return immediately.

23. Defendant admits only that the excerpt from Exhibit B as forth in paragraph 23 of the Amended Complaint is accurately quoted, but denies that he ever received such letter.

24. Defendant denies the allegations in paragraph 24 of the Amended Complaint.

25. Defendant lacks knowledge or information sufficient to form a belief as to what "Garnet became aware" of or "learned," as alleged in paragraph 25 of the Amended Complaint, and therefore can neither admit nor deny the allegations as pled. Furthermore, Defendant denies that his work for Guardian directly competed with Garnet, and further denies that he "retained Garnet's confidential information and property."

26. Defendant denies that any "facts became known" to Plaintiff, as alleged in paragraph 26 of the Amended Complaint, sufficient to cause Garnet to write the letter dated February 10, 2014, but admits that he did receive a letter, a copy of which is annexed to the Complaint as Exhibit C.

27. Defendant admits that paragraph 27 of the Amended Complaint summarizes a portion of the contents of the February 10, 2014 letter, but denies the truth of the accusations contained in that letter.

28. Defendant admits the allegations in paragraph 28 of the Amended Complaint.

29. Defendant denies the allegations in paragraph 29 of the Amended Complaint.

30. Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the Amended Complaint concerning who, if anyone, called Garnet's sales staff and what, if anything, they said about Defendant. Defendant denies the remainder of the allegations in paragraph 30 of the Amended Complaint.

31. Answering paragraph 31 of the Amended Complaint, Defendant denies having made "contacts … with Garnet clients" as alleged, and has no reason to deny that "Garnet is not aware of any of its clients that subsequently became clients of Carragher."

32. Defendant denies the allegations in paragraph 32 of the Amended Complaint, except to admit that Exhibit E to the Complaint accurately depicts screen shots of Defendant's LinkedIn page as it existed at a certain point in time.

33. Defendant denies that he ever received the letter identified as Exhibit F to the Complaint, and therefore denies the allegations in paragraph 33 of the Amended Complaint as well as the accusations contained in the letter attached as Exhibit F.

34. Defendant admits the allegations in paragraph 34 of the Amended Complaint, noting that he never received the March 21, 2014 letter and, even if he had received it, the letter did not request a written or oral response.

35. Defendant admits the allegations in paragraph 35 of the Amended Complaint, but denies that the March 21, 2014 letter, which he never received, was the reason he edited his LinkedIn page.

36. Defendant lacks knowledge or information sufficient to form a belief as to what Plaintiff "believed" in or about March 2014 as alleged in paragraph 36 of the Amended

Complaint; and can neither admit nor deny the allegation that "Garnet took no further action" on the ground that the statement is ambiguous, open-ended, not limited in time or scope, subject to multiple constructions, and incapable of being answered in the form pled.

37. Defendant lacks knowledge or information sufficient to form a belief as to what "evidence" Plaintiff "received" in May 2016, as alleged in paragraph 37 of the Amended Complaint. Defendant further denies the underlying allegations in paragraph 37, specifically denying that he "continued to retain Garnet confidential information and property for more than two years since he left Garnet" or that he engaged in conduct that was "a continuing violation of the Confidentiality and Non-Competition Agreement" as alleged therein.

38. Defendant denies the allegations set forth in paragraph 38 of the Amended Complaint.

39. Defendant denies the allegations set forth in paragraph 39 of the Amended Complaint.

40. Defendant denies the allegations set forth in paragraph 40 of the Amended Complaint.

41. Defendant denies the allegations set forth in paragraph 41 of the Amended Complaint, except to admit that the representations Defendant made in his February 12, 2014 letter were true.

42. Paragraph 42 of the Amended Complaint fails to set forth facts capable of being admitted or denied, instead reciting a mélange of speculation, suppositions and conclusions of law as to which no response is required. To the extent that any facts are alleged, the same are denied.

## ANSWERING THE FIRST (and only) CAUSE OF ACTION

43. Defendant repeats each response to the allegations set forth in paragraphs 1 through 42 as if set forth at length herein.

44. Inasmuch as Defendant has not worked for Plaintiff since February 2014, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 44 of the Amended Complaint. To the extent that paragraph 44 of the Amended Complaint refers to the time period during which Defendant worked for Plaintiff, Defendant admits only that some of the information that Garnet obtained from its clients was highly sensitive and subject to contractual confidentiality obligations, and lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 44 of the Amended Complaint.

45. Inasmuch as Defendant has not worked for Plaintiff since February 2014, Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 45 of the Amended Complaint. To the extent that paragraph 45 of the Amended Complaint refers to the time period during which Defendant worked for Plaintiff, Defendant admits the allegations contained therein.

46. Defendant lacks knowledge or information sufficient to admit or deny the allegations in paragraph 46 of the Amended Complaint, inasmuch as Defendant was never given copies of any documents he signed at the time of his hire, including the document attached as Exhibit A to the Complaint, and at the time of Defendant's signing of various hiring documents, Plaintiff never gave Defendant the opportunity to read and digest the contents of any such documents. Furthermore, to the extent that Plaintiff can prove that Defendant signed Exhibit A, Defendant denies that it is a valid and enforceable contract.

47. Defendant denies the allegations in paragraph 47 of the Amended Complaint.

48. Defendant denies the allegations in paragraph 48 of the Amended Complaint.

49. Defendant denies the allegations in paragraph 49 of the Amended Complaint.

50. Defendant denies the allegations in paragraph 50 of the Amended Complaint.

51. Defendant denies the allegations in paragraph 51 of the Amended Complaint.

## **DEFENSES**

Defendant, without prejudice to his other pleadings, sets forth the following defenses and, in asserting these defenses, Defendant does not assume any burden of proof not otherwise legally assigned to him.

52. The Court lacks jurisdiction over the person of the Defendant based on lack of proper service of process.

53. The Complaint fails to state a claim upon which relief can be granted.

54. Plaintiff's claims are barred by the doctrines of waiver and estoppel in that in January 2014, several months after Plaintiff told Defendant that he would be terminated, having had no cause to do so, and advised him to look for another job, and prior to his termination date with Plaintiff, Defendant informed Plaintiff that he had accepted a position with Guardian/Sortis, a company whose business was, in part, devoted to managing loan portfolio sales.  Plaintiff understood at that time the nature and scope of the business endeavors of Guardian/Sortis, understood that Defendant would be involved in that business, raised no objections to Defendant's expressed intention to work for Guardian/Sortis in that capacity and, in fact, wished Defendant good luck in his new position.

55. Plaintiff's claims are barred by the doctrine of laches, in that Plaintiff waited more than two-and-a-half years to file suit against Defendant despite knowing about Defendant's plans

to work for Guardian/Sortis in January 2014. Said delay by Plaintiff in commencing suit renders its claim for equitable relief untimely, as Plaintiff has unduly slept on its rights. Moreover, said delay has caused prejudice to Defendant in having to defend himself in the instant matter.

56. To the extent that Plaintiff can prove the existence of any contracts between the parties, Defendant's obligations, if any, were rendered null, void and unenforceable as a result of Plaintiff's prior breach of such agreements, including but not limited to Plaintiff's failure and refusal to pay Defendant the compensation to which he was entitled while employed by Plaintiff.

57. To the extent that Plaintiff can prove the existence of any non-compete or non-solicitation agreement signed or otherwise agreed to by Defendant, such agreement is unenforceable because it (a) was greater in scope than necessary to protect Plaintiff's legitimate interests; (b) imposed undue hardship on the Defendant by unreasonably restricting him from earning a living; (c) impermissibly sought to impose restrictions on Defendant whose services to Plaintiff were not special, unique or extraordinary; (d) impermissibly sought to fetter the Defendant's right to apply to his own best advantage the skills and knowledge acquired by him, including the overall experience of his previous employment and general knowledge possessed by sales people generally and those employed in the financial services industry in particular; (e) was unreasonable in duration and geographic scope; (f) was unreasonably vague in defining the type of work Defendant was purportedly restricted from engaging in post-termination; and (g) impermissibly sought to restrict the Defendant from utilizing publicly-available, non-confidential information to develop his business and earn a living after termination of his employment with Plaintiff.

58.  To the extent that Plaintiff can prove the existence of any contracts signed or otherwise agreed to by Defendant that imposed post-termination obligations upon the Defendant, such contracts are unenforceable because of a failure of consideration.

59.  Plaintiff has unclean hands and, therefore, cannot obtain the equitable relief demanded in the Complaint.

**WHEREFORE**, Defendant SCOTT CARRAGHER respectfully requests that the Court dismiss this action with prejudice, with Plaintiff to bear costs and disbursements of Defendant.

## COUNTERCLAIMS

Defendant/Counterclaimant, SCOTT CARRAGHER ("Carragher"), complaining by way of counterclaim against Plaintiff/Counterclaim Defendant, GARNET CAPITAL ADVISORS, LLC ("Garnet"), alleges as follows:

### JURISDICTION

1.  The counterclaims asserted herein are compulsory pursuant to Fed. R. Civ. P. 13(a), in that they arise out of the transactions or occurrences that are the subject matter of the Plaintiff's Complaint and do not require adding another party over whom the court cannot acquire jurisdiction.

2.  This Court has supplemental jurisdiction over the instant counterclaims pursuant to 28 U.S.C. § 1367(a).

3.  This Court also has jurisdiction over the instant counterclaim pursuant to 28 U.S.C. § 1332 based upon the parties' diversity of citizenship and the fact that the amount in controversy, exclusive of interest and costs, exceeds $75,000.

4. This Court also has jurisdiction pursuant to 28 U.S.C. § 1331 in that one of the counterclaims herein is based upon a statute of the United States.

**PARTIES**

5. Carragher is a citizen of the State of New Jersey residing in Morristown, New Jersey.

6. Upon information and belief, Garnet is a Delaware limited liability company with a principal place of business in Harrison, New York, and all of its members are citizens of New York State.

**FIRST COUNTERCLAIM**

**COMPUTER HACKING IN VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT 18 U.S.C. § 1030**

7. In or about February 2014, Carragher purchased a new Macbook Air laptop computer ("Laptop") for his sole and exclusive personal and business use.

8. Over time, the Laptop accumulated, and was a portal through which Carragher created, received, transmitted and used, private, personal, confidential and proprietary information for both personal and business reasons.

9. The Laptop was a computer that was used in and/or affected interstate or foreign commerce or communication, and was thereby a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B).

10. Garnet was not authorized to access the Laptop.

11. No principal, member, employee, agent, or individual or entity acting on behalf of Garnet was authorized to access the Laptop.

12. Starting in approximately June 2015, and possibly earlier, and unknown to Carragher at the time, Garnet—through its agents and employees, including Robin Ishmael—

intentionally, knowingly and without authorization, gained access to the Laptop and extracted therefrom the information and communications flowing through and stored on it, including the aforementioned private, personal, confidential and proprietary information that Carragher created, received, transmitted and used for both personal and business reasons.

13. Suspecting that his Laptop had been compromised, Carragher engaged the services of computer forensics experts at a cost of approximately $9,000, who confirmed that the Laptop had been accessed without authorization and that spyware and keylogging software had been planted on the Laptop to furtively and unlawfully obtain, copy and transmit information contained thereon.

14. Upon information and belief, Garnet caused, and/or conspired with others to cause, the spyware and keylogging software to be furtively planted on the Laptop, without Carragher's authorization, for the purpose of unlawfully obtaining, copying and transmitting and using the information contained thereon.

15. The aforementioned acts carried out by Garnet violated the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C) in that Garnet gained unauthorized access to a "protected computer," and Carragher has been damaged thereby in an amount in excess of $5,000.

16. As a result of the foregoing, Carragher is entitled to compensatory damages from Garnet, as well as injunctive relief or other equitable relief pursuant to 18 U.S.C. § 1030(g).

## SECOND COUNTERCLAIM

### COMPUTER HACKING IN VIOLATION OF THE NEW JERSEY COMPUTER RELATED OFFENSE ACT, N.J.S.A. 2A:38A-1, *et seq.*

17. Carragher repeats each and every allegation set forth above as if set forth at length herein.

18. The aforementioned acts of Garnet also constitute violations of the New Jersey Computer Related Offense Act, NJSA 2A:38A-1, *et seq.*, entitling Carragher to compensatory damages, punitive damages and injunctive relief.

## THIRD COUNTERCLAIM

### TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS

19. Carragher was employed by Garnet as an Assistant Vice President from October 2010 through February 4, 2014.

20. Carragher received good performance reviews throughout his tenure with Garnet.

21. In late 2013, Garnet informed Carragher that his employment would be terminated and advised him to look for another job.

22. No reason was given for Garnet's decision to terminate Carragher's employment.

23. Carragher's employment with Garnet terminated on February 4, 2014, after which Carragher became employed by another company, Guardian Investment Banking and Real Estate, which later became known as Sortis Group, LLC ("Guardian/Sortis").

24. In or about June 2016, Carragher accepted an offer by the global real estate investment firm Ackman-Ziff to become the Chief Operating Officer in charge of the newly-created loan sales division of that company, a position that would have substantially increased Carragher's then-current compensation.

25. Upon information and belief, as a result of Garnet's unlawful and unauthorized hacking and/or conspiracy to hack into Carragher's laptop computer, Garnet learned of Carragher's job interview with Ackman-Ziff and that firm's offer of employment to Carragher.

26. Within 24 hours of Carragher's acceptance of Ackman-Ziff's job offer, Garnet—acting through one of its managing partners, Sean McVity—contacted Simon Ziff of Ackman-Ziff and, for no other purpose than to injure Carragher and induce Ackman-Ziff to rescind its employment offer, told Simon Ziff that Carragher was having marital problems and falsely told Mr. Ziff, among other things, that Carragher had serious credibility issues and that it would be a mistake for Ackman-Ziff to hire Carragher.

27. Immediately thereafter, and as a sole result of Garnet's intentionally malicious statements, Ackman-Ziff rescinded its employment offer to Carragher.

28. Garnet and its principals, including Sean McVity, had no grounds or motive to utter the aforementioned statements to Simon Ziff, other than to thwart Carragher's efforts to advance his career, to satisfy a vengeful animus against Carragher motivated by an unfounded belief that Carragher was attempting to compete with Garnet, and to execute a spiteful plan to damage Carragher's reputation and intentionally interfere with his contractual relations and economic opportunities.

29. As a result of the foregoing, Carragher has been damaged in an amount to be proven at trial, but no less than $1,000,000.

## FOURTH COUNTERCLAIM

## INVASION OF PRIVACY

30. Carragher repeats each and every allegation set forth above as if set forth at length herein.

31. In early February 2014, while Carragher was attending a business convention in Las Vegas, Nevada, Garnet caused its Human Resources Manager, Mary Ishmael, who is also the mother of Carragher's soon-to-be-divorced wife, to enter Carragher's home office in New Jersey without authorization and rifle through Carragher's personal and business files.

32. During the aforementioned trespass upon and through the real and personal property of Carragher, Mary Ishmael, intentionally, with malice, and without authorization, removed and copied Carragher's employment contract with his new employer, Guardian/Sortis.

33. The personal belongings of Carragher through which Mary Ishmael rifled were private and confidential.

34. By employing Mary Ishmael to rifle through Carragher's personal belongings for the purpose of locating and copying his employment contract with Guardian/Sortis, Garnet intentionally intruded into Carragher's seclusion without permission; the intrusion was highly offensive to a reasonable person; and the matter or activities into which Garnet intruded were private.

35. As a result of the foregoing, Carragher has been damaged in an amount to be proven at trial.

## FIFTH COUNTERCLAIM

## BREACH OF CONTRACT

36. Carragher repeats each and every allegation set forth above as if set forth at length herein.

37. Carragher's employment agreement with Garnet entitled Carragher to compensation over and above his base pay if he met certain performance thresholds.

38. During his employment with Garnet, Carragher did meet performance thresholds entitling him to such additional compensation in excess of his base pay.

39. Garnet has failed and refused to pay Carragher the additional compensation, believed to be in an amount of no less than $80,000, to which he is entitled.

40. The aforementioned conduct of Garnet constitutes a breach of contract that has damaged Carragher.

## SIXTH COUNTERCLAIM

## INJUNCTIVE RELIEF

41. Carragher repeats each and every allegation set forth above as if set forth at length herein.

42. Garnet's willful implementation of a malicious plan to damage Carragher's reputation by communicating with Carragher's prospective employers and customers has interfered with and thwarted Carragher's efforts to advance his employment opportunities.

43. As a result of the foregoing, Carragher has been irreparably damaged.

44. Carragher has no adequate remedy at law.

45. Accordingly, Garnet should be permanently restrained and enjoined from communicating with, or soliciting, encouraging or urging any person to communicate with, any

prospective employers or customers of Carragher in a manner designed to cast Carragher in a bad light and to discourage prospective employers and customers from hiring or doing business with him.

## PRAYER FOR RELIEF

**WHEREFORE**, Carragher demands judgment on his counterclaims against Garnet as follows:

- On the **First Counterclaim**, compensatory damages in an amount to be proven at trial, but no less than $9,000, as well as injunctive relief or other equitable relief pursuant to 18 U.S.C. § 1030(g), including a preliminary and permanent injunction:

    (a) enjoining and restraining Garnet and its principals, members, employees agents and those acting on Garnet's behalf, directly or indirectly, from accessing, viewing, copying, transmitting, retaining, possessing, disclosing or using any data, communications or other electronically-stored information contained in, passing through, or obtained from Carragher's Laptop or any computer, electronic device, e-mail account, social media account, or other electronic portal, communications system or storage medium owned or controlled by Carragher that is password-protected or otherwise unavailable to the public, and as to which Garnet has not been given specific written authorization by Carragher to access;

    and

    (b) compelling Garnet and its principals, members, employees agents and those acting on Garnet's behalf to disclose to Carragher all data, communications or other electronically-stored information that Garnet or its principals, members, employees agents or those acting on Garnet's behalf obtained from Carragher's Laptop or from any computer, electronic device, e-mail account, social media account, or other electronic portal, communications system or storage medium that is password-protected or otherwise unavailable to the public, and as to which Garnet has not been given specific written authorization by Carragher to access

- On the **Second Counterclaim**, compensatory damages in an amount to be proven at trial, but no less than $9,000, as well as punitive damages and injunctive relief pursuant to NJSA 2A:38A-1, *et seq*, including a preliminary and permanent injunction:

(a) enjoining and restraining Garnet and its principals, members, employees agents and those acting on Garnet's behalf, directly or indirectly, from accessing, viewing, copying, transmitting, retaining, possessing, disclosing or using any data, communications or other electronically-stored information contained in, passing through, or obtained from Carragher's Laptop or any computer, electronic device, e-mail account, social media account, or other electronic portal, communications system or storage medium owned or controlled by Carragher that is password-protected or otherwise unavailable to the public, and as to which Garnet has not been given specific written authorization by Carragher to access;

and

(b) compelling Garnet and its principals, members, employees agents and those acting on Garnet's behalf to disclose to Carragher all data, communications or other electronically-stored information that Garnet or its principals, members, employees agents or those acting on Garnet's behalf obtained from Carragher's Laptop or from any computer, electronic device, e-mail account, social media account, or other electronic portal, communications system or storage medium that is password-protected or otherwise unavailable to the public, and as to which Garnet has not been given specific written authorization by Carragher to access;

- On the **Third Counterclaim**, compensatory and punitive damages in an amount to be proven at trial, but no less than $1,000,000;

- On the **Fourth Counterclaim**, compensatory and punitive damages in an amount to be proven at trial;

- On the **Fifth Counterclaim**, compensatory damages in an amount to be proven at trial, but no less than $80,000;

- On the **Sixth Counterclaim**, a preliminary and permanent injunction restraining and enjoining Garnet from communicating with, or soliciting, encouraging or urging any person to communicate with, any prospective employers or customers of Carragher in a manner designed to cast Carragher in a bad light and to discourage prospective employers and customers from hiring or doing business with him;

Together with costs, disbursements and attorneys' fees, and such other relief as the Court deems just and proper.

## JURY DEMAND

Defendant / Counterclaimant, SCOTT CARRAGHER, demands a trial by jury as to all claims, defenses and counterclaims in this action.

Dated: New York, New York
November 16, 2016

**PORZIO, BROMBERG & NEWMAN, P.C.**

By: s/Gary M. Fellner
Gary M. Fellner
Allan I. Young
156 West 56th Street, Suite 803
New York, NY 10019
Tel: 212-265-6888
Fax: 212-957-3983
E-mail: gmfellner@pbnlaw.com
E-mail: aiyoung@pbnlaw.com
*Attorneys for Defendant/Counterclaimant Scott Carragher*